Philip MASTBERGEN, Appellant,

v.

CITY OF SHELDON, Appellee.

No. 92–1575.

Supreme Court of Iowa.

April 20, 1994.

Richard J. Barry of Montgomery, Barry & Bovee, Spencer, for appellant.

Phil Redenbaugh and Corwin Ritchie, Storm Lake, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

PER CURIAM.

Philip Mastbergen sued the City of Sheldon for damages arising from the robbery of his jewelry store. The district court set aside a jury verdict in Mastbergen's favor. On appeal Mastbergen contends the district court erred in finding that the payment of a five-dollar monthly monitoring fee did not create a special relationship between the City and merchants with silent alarms. He also contends that the discretionary function liability exemption does not apply. We affirm.

Philip Mastbergen owns a jewelry store in Sheldon, Iowa. In the 1970s, Sheldon's chief of police, Bill Van Rennes, asked Mastbergen if he was interested in a silent alarm system to be monitored by the police department. According to Mastbergen, the chief assured him that, if an alarm went off, the police would respond professionally and be in a position to apprehend any intruders. Mastbergen opted to have an alarm system installed and paid for the equipment, installation, and any maintenance required. For eleven years, he paid the City a monthly monitoring fee.

On August 14, 1987, Mastbergen's jewelry store was robbed by two armed men. According to police logs, the silent alarm was received at 9:25 a.m. The dispatcher telephoned the jewelry store, and when she received no response, she contacted the two on-duty officers, Chief Van Rennes and Officer McCarville, who were en route to the jewelry store at 9:27 a.m.

Van Rennes dropped McCarville at the back of the store and then drove around and parked the marked car near the front entrance. Unbeknownst to the officers, there were two robbers in the store at the time. Van Rennes walked to the front door and was assaulted by one of the robbers. He was knocked to the ground, and his service revolver was taken. At 9:31 a.m., the police dispatcher received a message that an officer was down and needed help.

McCarville had entered the rear of the store. He freed one of the employees from her bonds and proceeded to the front of the store. The perpetrators were gone and had taken a substantial amount of inventory. They were eventually apprehended in California and returned for prosecution. However, few of the stolen items were recovered.

Mastbergen brought this action for damages against the City of Sheldon, alleging among other things that the City had been negligent in failing to prepare an adequate plan to respond to merchants' silent alarms. Mastbergen introduced expert testimony that a proper response plan would prescribe that, upon receiving an alarm, police would be notified immediately. A pretext call would then be made by the dispatcher. Officers would take up covert positions outside the business and would not enter the building until an all clear signal was received. There was also evidence introduced that the Sheldon police received an average of ten false alarms per month and that Van Rennes approached Mastbergen's in a very casual manner.

The jury returned a verdict for Mastbergen. The district court entered judgment notwithstanding the verdict, concluding as a matter of law that the City owed Mastbergen no special duty beyond the general duty to investigate a crime. It also concluded that the preparation of a response or operational plan was a discretionary function exempting the municipality from tort liability.

On appeal Mastbergen argues that the payment of a fee created a special relationship between the City and the merchants with silent alarms, from which arose a duty of "professional response." The City contends it had no duty beyond the general duty to protect the citizenry and respond to reports of a crime in progress. It argues that the five-dollar monthly monitoring fee was insufficient to create a special relationship. Moreover, the City argues that it had discretion in determining the terms of the police response policy and thus there could be no tort liability.

■ Our review is for the correction of errors at law. Iowa R.App.P. 4. The threshold question in any tort case is whether the defendant owed the plaintiff a duty of care. *Sankey v. Richenberger*, 456 N.W.2d 206, 207 (Iowa 1990). Whether such a duty exists is a question of law. *Id.*

■ This court has adopted the general rule that a person owes no duty to act for the protection of others unless the actor has a "special relationship" to the other person. *Hildenbrand v. Cox*, 369 N.W.2d 411 (Iowa 1985). The rule extends to law enforcement personnel. *See Sankey*, 456 N.W.2d at 206 (nothing in city ordinances created a particularized duty running from the chief of police to council members distinguishable from the chief's general duty to keep the peace); *Hildenbrand*, 369 N.W.2d at 411 (where officer did not create the condition that placed intoxicated motorist's life in jeopardy and did not take motorist into custody or control at any time, no special relationship existed); *Smith v. State*, 324 N.W.2d 299 (Iowa 1982) (accused but later acquitted persons cannot sue law enforcement on theory that investigation was negligent). The refusal to recognize a particularized duty to protect individuals is grounded on the belief that law enforcement owes a general duty to the public and the imposition of liability would jeopardize continued vigorous police work. *Smith*, 324 N.W.2d at 301.

Mastbergen contends that his monthly fee relating to the silent alarm system created a special relationship with law enforcement personnel. We do not agree. This court has pointed to sections 314, 314A, 315, 319 and 320 of Restatement (Second) of Torts (1965) to identify special relationships under which liability may be imposed. *Hildenbrand*, 369 N.W.2d at 415. Consistent with the common-law principles recognized by those sections, we have recognized two exceptions when law enforcement may be liable for damages: (1) when the police create the situation that places the citizen's life in jeopardy and (2) when the police take a citizen into custody and control. *Id.* Neither exception is applicable here.

By necessity, police officers exercise broad discretion in investigating crime. *Hildenbrand*, 369 N.W.2d at 415. While Mastbergen did pay a small monthly fee to cover the monitoring of his silent alarm, to recognize a special relationship under these circumstances would conflict with the discretion to which police are entitled. We conclude the "public is better served by a policy that encourages the police to provide extra citizen protection without the fear of incurring liability for mistakes." *Hawkeye Bank & Trust Co. v. Spencer*, 487 N.W.2d 94, 97 (Iowa App.1992) (police promise of "special watch" did not create a special relationship).

The police promptly investigated Mastbergen's activated silent alarm and thus fulfilled their general duty of protection. No special relationship existed between Mastbergen and City law enforcement creating some more particularized duty. The district court did not err in so concluding.

We need not and do not reach the issue of whether the preparation of a response plan is a discretionary function.

**AFFIRMED.**